Filed 3/13/14  A-Z Bus Sales v. City of Burbank CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| A-Z BUS SALES, INC.,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>CITY OF BURBANK,<br><br>  Defendant and Appellant. | B244867 (Consolidated w/B247187)<br><br>(Los Angeles County Super. Ct. No. BC449410) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Alan S. Rosenfield, Judge.  Affirmed.

Amelia Ann Albano, City Attorney, and Carolyn A. Barnes, Senior Assistant City Attorney, for Defendant and Appellant.

Manning, Leaver, Bruder & Berberich, Halbert B. Rasmussen and Franjo M. Dolenac for Plaintiff and Respondent.

_____

Defendant and appellant City of Burbank (Burbank) appeals the jury's verdict in favor of plaintiff and respondent A-Z Bus Sales, Inc. (A-Z Bus), and the trial court's order awarding attorney fees to A-Z Bus in a breach of contract action. Burbank contends the judgment should be reversed because the trial court used an erroneous legal standard and committed instructional error, there is insufficient evidence to support the verdict, and the court awarded unreasonable attorney fees. We affirm.

## FACTS

A-Z Bus is the sole California retailer of Blue Bird Buses. In 2007, Burbank's Jonathan Frank contacted A-Z Bus's Southern California sales manager Stephen Oller to procure five Blue Bird Buses. Burbank obtained a request for proposal (RFP) from another municipality so that it could "piggyback" and bypass the bidding process by placing its order based on an already approved bid that conformed to federal standards and guidelines. Oller provided an RFP that A-Z Bus procured for the City of Folsom for the same type of buses Burbank intended to purchase. The parties piggybacked on the terms and conditions of the Folsom contract, which incorporated the Folsom RFP. The Folsom RFP specified the time for delivery as "The Earliest Date of Delivery: 180 days from receipt of purchase order." The Folsom contract included a clause providing for attorney fees and costs. On October 15, 2007, Oller provided Burbank with a quote for the five buses, based on the Folsom RFP. The quote included an estimated delivery date of 270 days from receipt of the purchase order. Approximately eight months later, on June 30, 2008, Burbank faxed A-Z Bus its purchase order, dated June 27, 2008, which incorporated the Folsom RFP and Folsom contract by reference. The purchase order did not contain a time for delivery. March 27, 2009, would be 270 days from the date of the purchase order.

Due to delays in Blue Bird's production, the buses were not delivered on or before March 27, 2009. The delivery dates for the buses are disputed, but the evidence

2

establishes that no buses were delivered prior to May 2009 or after August 2009.[1]  It is undisputed the buses were not delivered at the same time, but on multiple dates.  Burbank paid for the first four buses in full but tendered payment for the fifth bus, less $44,960.32.

In a letter dated August 25, 2009, Burbank claimed damages for the delayed delivery in the form of additional contractor-provided vehicle services, increased sales taxes, staffing and mileage costs to inspect the vehicles (due to multiple delivery dates), and increased paint costs.  Burbank did not comply with A-Z Bus's demand for full payment.

A-Z Bus sued Burbank for breach of contract on November 12, 2010.  The complaint alleged the parties contracted for the sale of five buses, A-Z Bus delivered and Burbank accepted the buses, and Burbank tendered $44,960 less than the agreed upon price.  Burbank answered, claiming A-Z Bus did not state sufficient facts to constitute a cause of action.  A-Z Bus filed the operative first amended complaint, which was identical to the complaint, with the exception that the parties' contract was attached.  Efforts at settlement were unsuccessful, and the case proceeded to jury trial.  The jury returned its verdict in favor of A-Z Bus, awarding $44,960.32 in damages.

Burbank filed a motion for new trial, which the trial court denied.  Burbank then filed a timely notice of appeal from the judgment.

Pursuant to Civil Code section 1717, A-Z Bus moved for attorney fees.  The trial court awarded $192,678.98 in costs and attorney fees to A-Z Bus, after deducting fees it deemed duplicative and/or unnecessary.  Burbank filed a timely notice of appeal from the order awarding attorney fees.  The appeals were consolidated.

---

[1]  A-Z Bus asserts the first bus was delivered as early as May 2009, with the last two buses delivered and accepted by Burbank in late July 2009.  Burbank claims the buses were delivered and accepted in July and August of 2009.

**Legal Standard and Jury Instructions**

Burbank contends the trial court erred in applying the California Commercial Code (the CCC) to A-Z Bus's breach of contract claim, because A-Z Bus did not specifically plead its claim under the CCC in either the complaint or first amended complaint. Burbank further asserts that up until trial A-Z Bus pursued its claim under a common law theory of breach of contract, rather than under the CCC, and unfairly surprised Burbank with a legal theory it was not prepared to defend against.

Burbank does not contest the CCC is applicable to the case in light of the evidence produced at trial. It frames its contention as misapplication of the law but relies on alleged legal insufficiency of the pleadings and unfair surprise to establish the law was misapplied. We agree with the trial court's straightforward assessment of these issues: "[I]f the case started out with less than specific pleadings throughout the course of this litigation, I can't see . . . that either side is surprised as to the fact that we're going to be dealing with this scenario [in which the CCC applies]. . . . [¶] . . . I don't know that we have to amend the cause of action here. It's a breach of contract or it isn't. They are saying you owe them money; you are saying you don't."

Although the first amended complaint was not as clear as it might have been in its articulation of the legal theory A-Z Bus intended to pursue, it nonetheless stated a claim under the CCC, and any argument regarding surprise is without merit. A-Z Bus's pleadings neglected to cite to, or mention, the CCC. "However, 'the test of the adequacy of a complaint is whether it alleges sufficient *facts* to support a particular cause of action and not whether it expressly alleges legal theories of liability underlying a cause of action. A complaint is adequate if its factual allegations are sufficient to support a cause of action on any available legal theory (whether specifically pleaded or not). [Citation.]' (*Smith v. Wells Fargo Bank*, *N.A.* [(2005)] 135 Cal.App.4th[, 1463,] 1485.)" (*Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 490.) In an "action for the price" pursuant to Commercial Code section 2709, subdivision (1)(a), the seller must establish: (1) a valid contract for the sale of goods; (2) the buyer's acceptance of the

4

goods; and (3) the buyer's failure to pay the agreed upon price. It is undisputed A-Z Bus alleged facts to support all three elements in the pleadings. Therefore, the pleadings sufficiently stated a cause of action under the CCC. Moreover, Burbank was on notice that the CCC might apply. The trial court asked for briefing on the application of the CCC twice before trial and made its ruling prior to trial. Burbank had the opportunity to request a continuance for further preparation after the ruling but did not do so.

Burbank further contends the CCC should not apply because the parties chose to operate under the contract provisions rather than under the CCC. With certain exceptions, Commercial Code section 1302, subdivision (a) allows for variations from the provisions of the CCC by agreement. The CCC commentary explains "[a]n agreement that varies the effect of provisions of the . . . Commercial Code may do so by stating the rules that will govern in lieu of the provisions varied." (Cal. U. Com. Code, com. 2 to § 1302.) Here, the date of delivery was not clearly specified in the documents that made up the contract. The only dates included were the provision that delivery be no earlier than 180 days from the date of the purchase order contained in the Folsum RFP and the estimated date of delivery of 270 days from the date of the purchase order contained in Oller's quote. Because no terms replaced the CCC's terms, the law applicable to the contract was not varied by agreement, and the trial court did not err in determining the CCC applied to this case.

Burbank's contention the trial court abused its discretion in giving modified instructions that improperly shifted the burden of proof is based on the premise the court erroneously applied the CCC's standards to this case. We find no error in the court's application of the law, and thus no error in the instructional modifications based upon that law.[2]

Finally, Burbank's contention the trial court's misallocation of the burden of proof was prejudicial, denied it a fair trial, and resulted in a miscarriage of justice also

---

[2] Burbank does not dispute the instructions are a correct statement of the law.

5

necessarily fails in light of our conclusion the trial court employed the correct legal standard and properly allocated the burden of proof.

**Sufficiency of Evidence Supporting the Verdict**

Burbank contends there was insufficient evidence to support the verdict with respect to whether delivery was timely.

"When considering a claim of insufficient evidence on appeal, we do not reweigh the evidence, but rather determine whether, after resolving all conflicts favorably to the prevailing party, and according the prevailing party the benefit of all reasonable inferences, there is substantial evidence to support the judgment." (*Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 465, disapproved on other grounds in *Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 352, fn. 17.) "'In reviewing the evidence on . . . appeal all conflicts must be resolved in favor of the [prevailing party], and all legitimate and reasonable inferences indulged in to uphold the [finding] if possible. . . . [W]hen a [finding] is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the [finding]. . . .' [Citation.]" (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571.)

Under the CCC "[p]ayment is due at the time and place at which the buyer is to receive the goods" (Cal. U. Com. Code, § 2310, subd. (a)), and "[t]he time for . . . delivery . . . if not . . . agreed upon shall be a reasonable time" (*id*., § 2309, subd. (1)). A "reasonable time takes into consideration the . . . subject of the contract and the condition of the merchandise for the sale and delivery of which the contract is made." (*Hougland v. Roth Blum Packing Co*. (1929) 99 Cal.App. 631, 635.) "'The question of what is a reasonable time depends in each case upon its own particular circumstances. It is primarily a question of fact . . . .' [Citations.]" (*C. A. Hooper & Co. v. Freeman, Smith & Camp Co.* (1934) 1 Cal.App.2d 122, 124.)

Here, A-Z Bus proffered substantial evidence the buses were delivered within a reasonable time. Its expert testified that in his experience, it was reasonable for delivery of buses to take a year or more from the date of the purchase order. He explained that production could vary substantially within the procurement process: "There are thousands of pieces of equipment on a bus. And if any one of those vendors fall short, it could push the order out." The expert testified to significant events in the industry that occurred during the procurement process: Blue Bird merged with NABI, another bus manufacturer; and two of the three companies which had previously manufactured the engines required for the buses ended production of those engines. Oller testified that A-Z Bus was the only retailer for Blue Bird in California, and Burbank required the specific buses in question to ensure uniformity in its fleet and could not have gone to another retailer to fulfill its order faster. The delays were not on A-Z Bus's end—they were caused by unforeseen delays in production at Blue Bird. Even if Burbank had been able to procure the specific buses it wanted from a different retailer, they would not have arrived any sooner because the problem originated with the manufacturer, and all retailers would have been subject to the same delays. Oller worked to hasten the process and stayed in communication with Blue Bird and Burbank throughout the process. Ultimately, the buses were delivered and accepted within a little over a year after the purchase order was made. We conclude substantial evidence supports the jury's finding.

**Attorney Fees**

A-Z Bus filed a motion for attorney fees pursuant to Civil Code section 1717, on the basis it was the prevailing party in an action on a contract containing attorney fee provisions. The trial court awarded A-Z Bus $192,678.98 in costs and attorney fees, after reducing the amount of attorney fees requested by $34,630.75.

Burbank contends the attorney fees awarded were unreasonable because the trial court lacked a sufficient basis to make a reasoned determination, and because the attorney

7

fees were not proportional to the damages A-Z Bus recovered. Burbank asserts the court should have exercised its discretion to reduce the award further. We disagree.

"The 'lodestar' or 'touchstone' method is the approved method to decide the actual amount of attorney fees to be awarded under [Civil Code] section 1717. The lodestar method for calculating an award of attorney fees requires the trial court to first determine a touchstone or lodestar figure based on a careful compilation of the time spent and reasonable hourly compensation for each attorney. The trial court may then augment or diminish the touchstone figure by taking various relevant factors into account. (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 322.) Of absolute importance to this discussion is the fact that the purpose or goal of the adjustment is '*to fix the fee at the fair market value for the legal services provided*' based on 'an *objective determination of the value of the attorney's services . . . .*' (*PLCM Group, Inc. v. Drexler* [(2000)] 22 Cal.4th [1084,] 1095 (*PLCM* ), italics added; see also, *Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819; *Trope v. Katz* (1995) 11 Cal.4th 274, 289.)" (*EnPalm, LCC v. Teitler* (2008) 162 Cal.App.4th 770, 783.) "The factors to be considered include the nature and difficulty of the litigation, the amount of money involved, the skill required and employed to handle the case, the attention given, the success or failure, and other circumstances in the case. [Citation.] The 'necessity for and the nature of the litigation' are also factors to consider. [Citation.]" (*Id.* at p. 774.)

"A trial court's exercise of discretion concerning an award of attorney fees will not be reversed unless there is a manifest abuse of discretion. ([*PLCM, supra,*] 22 Cal.4th [at p.] 1095.) '"The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong[']—meaning that it abused its discretion. [Citations.]"' (*Ibid*., citing *Serrano v. Priest* (1977) 20 Cal.3d 25, 49 . . . .)" (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239.)

A-Z Bus's counsel, Franjo Dolenac, filed a declaration in support of the motion for attorney fees setting forth the name and rate of each attorney who worked on the case,

and attaching 30 pages of detailed summaries of time entries.  This evidence provided sufficient basis for the trial court to make its ruling.  (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375 ["The law is clear . . . that an award of attorney fees may be based on counsel's declarations, without production of detailed time records"]; see *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269 ["there is no legal requirement that an attorney supply billing statements to support a claim for attorney fees"]; *Steiny & Co. v. California Electric Supply Co.* (2000) 79 Cal.App.4th 285, 293 ["there is no legal requirement that [billing] statements be offered in evidence," and an "attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records"].)  The court determined the rates for counsel were "reasonable and in line with the Los Angeles area market rates."  It then granted the motion but deducted $4,478.50 for the opposition to motion to compel further responses; $371 for the motion for protective order; $20,886.25 for the partner's appearance at trial; $4,620 for the partner's legal research; and $4,275 for fees incurred after the filing of the attorney fees motion.

As is clear from the record, the trial court was aware of the standards that apply to the award of attorney fees.  It was in the best position to determine the value of the professional services provided to A-Z Bus, and, in fact, exercised its discretion to adjust the award downward to account for fees that it deemed unnecessary.  The $192,678.98 in costs and attorney fees, covering multiple attempts at mediation, a jury trial of several days, and motions for summary judgment and for new trial, among other matters, is not clearly excessive or an abuse of discretion.

**DISPOSITON**

The judgment and postjudgment orders are affirmed.  A-Z Bus is awarded costs on appeal.


KRIEGLER, J.


We concur:


TURNER, P. J.


MINK, J.*

---

*      Retired judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.